1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10

11    EBRAHIM MUSSA MOHAMED,                    Case No.:  15cv704-BEN(WVG)

12                                Petitioner,
                                               **REPORT AND**
13    v.                                        **RECOMMENDATION DENYING**
                                               **MOTION TO STAY**
14    CYNTHIA TAMPKINS,

15                                Respondent.

16

17    **I.       INTRODUCTION**

18         On March 30, 2015, Ebrahim Mussa Mohamed ("Petitioner"), a California state

19    prisoner, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. §

20    2254 challenging his San Diego Superior Court conviction for five counts of assault with

21    a deadly weapon and one count of stalking. (Doc. No. 1.) Petitioner challenges his state

22    court conviction on four distinct grounds.  He contends that (1) the Trial Court erred by not

23    obtaining Petitioner's express waiver of right to testify; (2) Petitioner had ineffective

24    assistance of appellate counsel; (3) ineffective assistance of trial counsel; and that (4)

25    Petitioner was given an "illegal sentence" by being charged with a crime unsupported by

26    some of the evidence. (Doc. No. 1.) The Petition acknowledges that of the four claims,

27    only the first has been properly exhausted. (Doc. No. 1 at 6-9.) Petitioner filed the instant

28    Motion to Stay ("Motion") his federal proceeding while he attempts to exhaust his three

                                              1

1    unexhausted claims. (Doc. No. 2.) Respondent Cynthia Tampkins ("Respondent") timely

2    filed an opposition. (Doc. No. 7.) Petitioner did not file a reply. Having reviewed all of the

3    briefing submitted by the parties, and for the reasons set forth below, the Court

4    RECOMMENDS that Petitioner's Motion be DENIED.

5    ## II.    PROCEDURAL OVERVIEW

6         On March 30, 2015, Petitioner filed a Petition for Writ of Habeas Corpus in this

7    Court. (Doc. No. 1.)  Petitioner simultaneously filed a Motion to Stay. (Doc. No. 2.)  The

8    Petition was dismissed without prejudice, allowing Petitioner until June 15, 2015, to submit

9    proof of his inability to pay filing fees. (Doc. No. 3.)  Petitioner filed a Motion for Leave

10   to Proceed In Forma Pauperis on May 20, 2015. (Doc. No. 4.)  The Court reopened his

11   matter and granted that motion. (Doc. No. 5.)  On June 3, 2015, Petitioner renewed the

12   instant Motion seeking to stay his Petition to allow him time to exhaust his claims. (Doc.

13   No. 9.)  On September 9, 2015, Respondent opposed Petitioner's motion. (Doc. No. 7.)

14   Nearly a month later, Petitioner requested an extension by which he could file a reply.

15   (Doc. No. 11.)  Although the Court granted Petitioner a month extension to November 5,

16   2015, to enable him to file his reply, Petitioner failed to file a reply. (Doc. No. 12.)

17   ## III.   LEGAL STANDARD

18        The Petition includes both exhausted and unexhausted claims.  Typically, a federal

19   court may not consider a petition for habeas corpus unless the petitioner first exhausts his

20   claims in state court. 28 U.S.C. § 2254(b)(1)(A); *Castille v. Peoples*, 489 U.S. 346, 349

21   (1989); *Rose v. Lundy*, 455 U.S. 509, 522 (1982) (ruling that "mixed petitions," i.e. those

22   containing both exhausted and unexhausted claims, must be dismissed); *see also Rhines v.*

23   *Weber*, 544 U.S. 269, 274-78 (2005). However, under limited circumstances, if a petitioner

24   files a "mixed" habeas petition, he may request the petition be stayed and held in abeyance

25   while he pursues his remaining unexhausted claims in state court. There are two alternative

26   procedures that a petitioner may pursue in order to obtain a stay.  The first is set forth in

27   *Kelly v. Small*; the other is set forth in *Rhines v. Weber. See Kelly v. Small*, 315 F.3d 1063

28   (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir.

15cv704-BEN(WVG)

1  2007); *see also King v. Ryan*, 564 F.3d 1133, 1135 (9th Cir. 2009) (ruling the *Kelly*

2  procedure remains available); *see also Rhines v. Weber*, 544 U.S. 269, 274-78 (2005).

3  Petitioner argues both the *Kelly* standard and *Rhines* procedure and attempts to argue that

4  he complies with each standard.[1]  Each is discussed in turn below.

5  ## IV.  LEGAL ANALYSIS

6  ### a. The *Kelly* Procedure

7       The stay and abeyance procedure set forth in *Kelly v. Small* requires the following

8  three-step process: "(1) the petitioner amends his petition to delete any unexhausted claims;

9  (2) the court stays and holds in abeyance the amended, fully exhausted petition, allowing

10  the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and

11  (3) the petitioner later amends his petition and re-attaches the newly-exhausted claims to

12  the original petition." *King*, 564 F.3d at 1135; *see also Kelly v. Small*, 315 F.3d 1063 (9th

13  Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007).

14  Here, Petitioner's Motion to Stay references the stay and abeyance procedure outlined in

15  *Kelly*. (Doc. No. 2 at 1 stating the "Petition satisfies '*Kelly vs Small*'(sic); *Mayle v. Felix*".)

16  Although Petitioner outlines the three-step process required to invoke the *Kelly* procedure,

17  he has not followed the necessary steps, nor does he express any intent to do so. (Doc. No.

18  2 at 2.) Contrary to the requirements outlined in *Kelly*, Petitioner has neither submitted an

19  amended Petition devoid of any unexhausted claims, nor has he requested that the Court

20  dismiss his unexhausted claims. *See King*, 564 F.3d at 1135 (noting that a petitioner

21  requesting the court dismiss unexhausted claims in order for petitioner to pursue the

22  unexhausted claims in state court may be enough to invoke the *Kelly* procedure).

23       Even if Petitioner were to invoke the *Kelly* procedure, a petitioner is only allowed to

24  add his newly-exhausted claims if the newly-exhausted claims are timely under the Anti-

25

26  [1]  The Ninth Circuit has held that both avenues are to a petitioner.  *See King v. Ryan*, 564 F.3d 1133, 1143

27  (9th Cir. 2009) (Holding that despite the *Rhines* decision, the earlier decided "three-step stay-and-abeyance procedure outlined in *Kelly* remains available.")

28

1    Terrorism and Effective Death Penalty Act ("AEDPA") or relate back to the previously

2    exhausted claims. *See King v. Ryan*, 564 F.3d 1133, 1140-41 (9th Cir. 2009). "[A] new

3    claim does not "relate back" to the filing of an exhausted petition simply because it arises

4    from 'the same trial, conviction, or sentence.'" *Id. quoting Mayle v. Felix*, 545 U.S. 644,

5    662-64 (2005). Rather, a petition relates back where it rests on the same or a similar set of

6    facts.   For example, in *Marquez v. Rawers*, the petitioner attempted to challenge the

7    Governor's decision to deny him parole. 2008 WL 704298, No. CV-F-03-6508 (E.D. Cal.

8    Mar. 4, 2008).  The petitioner's first habeas petition was timely exhausted and alleged that

9    his parole denial was based on insufficient evidence. *Id.* at *7.  The second habeas petition

10   was not timely exhausted, and, alleged that the Governor's decision to deny him parole

11   constituted an ex post facto violation. *Id.* The District Court found that the second petition

12   related back to the first petition because the petitioner "challenge[d] one action (the denial

13   of parole) taken by one actor (the Governor)." *Id.* The District Court contrasted this to the

14   facts presented in *Mayle v. Felix*, where the petitioner sought to relate unexhausted claims

15   challenging the petitioner's out of court interrogation responses to exhausted claims

16   challenging an out of court statement made by a third party witness.  *Id.*  There, the District

17   Court explained, the claims involved "a completely different set of facts." *Id.*

18          Even if Petitioner were to seek a *Kelly* stay, the Court questions whether Petitioner

19   would ultimately succeed in amending his petition to include the three presently

20   unexhausted claims.  It appears that Petitioner has already surpassed the AEDPA statute of

21   limitations as the Petition was filed nearly fifteen months after his state court case became

22   final.[2]   Thus, any amendments would likely be untimely unless they relate back to

23

24   _____

25   [2] Petitioner's appeal in the California Supreme Court was finalized on January 21, 2014.  The filing of a
     petition for federal habeas corpus relief does not toll AEDPA's statute of limitations (unlike an application
26   for state habeas corpus relief, which does). *See Duncan v. Walker*, 533 U.S. 167, 172 (2001).  Petitioner
     filed his petition in this Court on March 30, 2015.  Petitioner had only one year and ninety days to timely
27   file claims in this Court. *See Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999) ("When a petitioner
     fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations
28   period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires.")  All

Petitioners' sole exhausted claim. *See id.* 1142.

A comparison between Petitioner's claims reveals that the three unexhausted claims do not stem from the same set of facts as Petitioner's sole exhausted claim. Petitioner's singular exhausted claim alleges that the Trial Court erred by failing to obtain Petitioner's express waiver of his right to testify. (Doc. No. 1 at 6.) In stark contrast, Petitioner's remaining three claims do not even reference Petitioner's express waiver of his right to testify. Instead, each purports to be a new claim arising out of Petitioner's representation at both the trial and appellate phases, and challenging the evidence supporting Petitioner's ultimate sentence.

For sake of illustration, the Court reviews each of the unexhausted claims in comparison to Petitioner's single exhausted claim.[3]  Petitioner's exhausted claim alleges that the Trial Court failed to obtain an express waiver of Petitioner's right to testify.  The appellate court decision frames the issue as "the Trial Court's error" and finds that the evidence presented was a sufficient basis for the Trial Court to "reasonably conclude [Petitioner] Mohamed implicitly waived his right to testify at trial."  (App. Ct. Dec., at 4-6.)[4] Nothing in the decision refers to a claim against his trial counsel.  Rather the Court cites to the record that demonstrated "outside the jury's presence during trial, Mohamed was present when his counsel agreed with the Trial Court that if he (Mohamed) testified, his prior stalking conviction would be admissible for impeachment purposes.[5]  At that time, Mohamed made no statement indicating he wanted to testify." *Id.* at 4.

In stark contrast to Petitioner's exhausted claim, are Petitioner's unexhausted claims.

---

claims should have been exhausted and filed on or before April 21, 2015.  As discussed herein, Petitioner has only filed one exhausted claim before this Court before this date.

[3] "*Mayle* requires a comparison of a petitioner's new claims to the properly exhausted claims left pending in federal court." *King*, 564 F.3d at 1142.

[4] The Court located the state appellate court decision via the online state court records available at http://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=41&doc_id=2021352&doc_no=D062414.

[5] The California Court of Appeal decision notes that Petitioner has a prior conviction for stalking and has been convicted of a prior strike. (App. Ct. Dec., at 3.)

1  Petitioner alleges ineffective of assistance by his trial counsel.  Notably, Petitioner makes

2  no argument that his trial counsel was ineffective because she did not warn him about the

3  impact of his own refusal to testify.  Instead, Petitioner alleges that his trial counsel was

4  ineffective because trial counsel failed to (1) fully inform Petitioner of the pending charges;

5  (2) fully investigate the case; (3) negotiate a plea bargain; and (4) because trial counsel was

6  vindictive in representing Petitioner. (Doc. No. 2 at 18-23.)  Much of Petitioner's claim

7  attacks his trial counsel's failure to locate exculpatory third party witnesses. He claims that

8  she failed to "investigate the possibilities that the prosecutions (sic) witnesses were coersed

9  (sic) by police personnel." (Doc. No. 1 at 7:13-16.)  He also claims that his attorney failed

10 to obtain statements from the "victim, who was definitely for the defense." (*Id.* at 10:28-

11 11:2.)  Petitioner contends that "phone calls were made by Defendant. It was nothing to

12 get that witness to turn on the DA and back the Defendant." (*Id.* at 11:2-5.)[6]  Nothing in

13 Petitioner's argument references his own failure to testify, nor does he claim that his

14 counsel influenced his decision not to testify.

15      Petitioner also claims that his appellate counsel was ineffective.  In this claim,

16 Petitioner contends that his appellate counsel failed to argue the many ways the trial

17 counsel was ineffective. (Doc. No. 2 at 13-17.) As above, Petitioner makes no reference to

18 his failure to testify at his trial.

19      Petitioner's final unexhausted claim, which he characterizes as "Illegal Sentence,"

20 sets forth Petitioner's belief that he was charged with an incorrect crime unsupported by

21 the evidence elicited at trial. In this claim, Petitioner argues the evidence presented did not

22 support the charges or ultimate sentence. (Doc. No. 2 at 24-27.) He points to testimony by

23

24 _____

25 [6] As summarized by the California Court of Appeal Petitioner's conviction stems from five accounts of
   assault with a deadly weapon and one of stalking against his ex-girlfriend.  The victim was interviewed
26 by police, who determined that she "feared for her life." (App. Ct. Dec., at 3.)  According to documents
   and transcripts attached to the Petition, at the preliminary hearing Petitioner admitted to receiving a phone
27 call with Petitioner from prison. (Doc. No. 1 at 50-90.)  At the preliminary hearing, the victim also recanted
   and refuted much of the information she had earlier shared with the police and the detective.  She informed
28 the Trial Court that Petitioner had apologized, and said "he would be different." *Id.* at 61:2-17.)

1    the victim at the preliminary hearing refuting the information in the police files.  (*Id.*)

2    However, nothing pertains to any argument that if Petitioner had testified, the sentence

3    would have been impacted.  Accordingly, the Court finds that as presently alleged, none of

4    Petitioner's three unexhausted claims relate to, or even reference his exhausted claim that

5    the Trial Court erred by not obtaining Petitioner's express waiver of his right to testify.

6    Thus, even though Petitioner does not invoke the *Kelly* procedures, it is highly doubtful

7    that an attempt by Petitioner to file an amended petition under *Kelly* would be successful

8    as his unexhausted claims appear time barred.

9             **b.  The *Rhines* Procedure**

10            According to *Rhines*, a District Court may stay and hold in abeyance a "mixed"

11   habeas petition to allow a petitioner time to return to state court and pursue unexhausted

12   claims. *Rhines*, 544 U.S. at 276. This is available when (1) the petitioner has good cause

13   for failing to exhaust all claims; (2) the petitioner's unexhausted claims are potentially

14   meritorious; and (3) the petitioner did not intentionally engage in dilatory litigation tactics.

15   *Id.* at 277-78. Petitioner's declaration accompanying the Motion indicates that he seeks to

16   utilize the stay and abeyance procedure set forth in *Rhines* and argues that he satisfies the

17   three required elements. (*See* Doc. No. 9 at 7) (arguing that "circumstances beyond ones

18   control" is good cause for delay); (Doc. No. 9 at 5) (arguing that Petitioner's ineffective

19   assistance of counsel claims are meritorious).

20            Petitioner contends there is good cause for the stay. Good cause "turns on whether

21   the petitioner can set forth a reasonable excuse, supported by sufficient evidence," to justify

22   the failure to exhaust all claims in state court. *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir.

23   2014).  The Court must interpret whether a petitioner has "good cause" for a failure to

24   exhaust in light of the Supreme Court's instruction in *Rhines* that the District Court should

25   only stay mixed petitions in "limited circumstances." *Jackson v. Roe*, 425 F.3d 654, 661

26   (9th Cir. 2005).  As noted by the Ninth Circuit in *Wooten v. Kirkland*, the Court "must be

27   mindful that AEDPA aims to encourage the finality of sentences and to encourage

28   petitioners to exhaust their claims in state court before filing in federal court." *Wooten v.*

1    *Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008) (quoting *Rhines*, 544 U.S. at 276-77).

2           Petitioner claims that there is good cause to grant a stay because his appellate counsel

3    "failed to inform him of the California Supreme Court's decision" denying his Petition for

4    Review in January 2014, and also failed to notify him of the requirements of AEDPA.

5    (Doc. No. 9 at 4.)  However, Petitioner makes no attempt to explain why he delayed from

6    his trial date in 2013 to bring claims regarding his trial counsel or the ultimate sentence he

7    was issued.  The law requires Petitioner to pursue claims of ineffective assistance of

8    counsel diligently, and absent good cause, a stay will not issue.  *See Frluckaj v. Small*,

9    2009 WL 393776, at * 5-6 (C.D. Cal. Feb. 17, 2009) (finding that where petitioner was

10   aware of a particular claim and could have presented it to state courts before filing federal

11   habeas petition, petitioner had not shown "good cause" under *Rhines*); *Smith v. Horel*, 2008

12   WL 2038855, at *5 (C.D. Cal. May 8, 2008) (finding no good cause for petitioner's failure

13   to exhaust a claim where "[t]rial counsel's alleged deficient performance was known or

14   should have been known to Petitioner during or shortly after his trial").

15          Moreover, as present in this case, courts will not relax the strict requirements of the

16   law merely because Petitioner is self-represented or ignorant of the law requiring him to

17   file within the required timeframe. *See e.g., Hernandez v. California*, 2010 WL 1854416,

18   at *2–*3 (N.D. Cal. May 6, 2010) (concluding that limited education, lack of legal

19   assistance, and routine restrictions on law library access were insufficient to satisfy the

20   *Rhines* good cause requirement); *Hamilton v. Clark*, 2010 WL 530111, at *2 (E.D. Cal.

21   Feb.9, 2010) ("Ignorance of the law and limited access to a law library are common among

22   pro se prisoners and do not constitute good cause for failure to exhaust."); *Barno v.

23   Hernandez*, 2009 WL 2448435, at *6–*7 (S.D. Cal. Apr.17, 2009) (limited library access,

24   and lack of legal knowledge and literacy do not establish good cause); *Smith v. Giurbino*,

25   2008 WL 80983, at *2 (S.D. Cal. Jan.7, 2008) (holding that "lack of legal knowledge and

26   self-representation do not, in and of themselves, constitute good cause."); *Calvert v.

27   Daniels,* 2006 WL 2527639, at *2 (E.D. Wash. Aug.28, 2006) ("The Court finds that the

28   mere fact that a petitioner is acting pro se or lacks knowledge of the law does not establish

1   'good cause' under *Rhines*."); *Riseley v. Warden, Pleasant Valley State Prison*, 2006 WL

2   1652657, at *2 n. 3 (E.D. Cal. June 14, 2006) ("The mere fact that a petitioner is pro se or

3   lacks knowledge of the law is insufficient to satisfy the cause prong.").

4        Petitioner's only argument to support good cause points to information that his

5   appellate attorney purportedly failed to provide him. However, Petitioner makes no

6   attempt to explain his own lack of diligence to bring his claims against his trial counsel or

7   challenge his sentence as illegal. His claims for ineffective assistance of appellate counsel

8   relate to his appellate lawyer's failure to raise issues against his trial counsel in his appeal

9   – a claim he must have known about when he reviewed his appeal. Whether Petitioner's

10  appellate counsel notified him of the Supreme Court's decision in January 2015 or not,

11  Petitioner was aware of each of his three unexhausted claims well before that date.

12  Moreover, simple ignorance of the one year statute of limitations does not excuse

13  Petitioner's noncompliance. Accordingly, the Court cannot find that there is "good cause"

14  to grant a stay.

15       Petitioner also argues that his claims are meritorious and therefore merit a stay under

16  *Rhines*. The Court disagrees. In order to demonstrate ineffective assistance of trial

17  counsel, petitioner must show that his counsel's performance was deficient and that the

18  deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668,

19  687 (1984). A deficient performance is one that is "outside the wide range of professionally

20  competent assistance." *Id.* at 689. Prejudice requires "showing that counsel's errors were

21  so serious as to deprive [a criminal] defendant of a fair trial, a trial whose result is reliable."

22  *Id.* at 687. Counsel is "strongly presumed to have rendered adequate assistance and made

23  all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

24       Petitioner's second claim merely attacks his appellate counsel as ineffective for

25  failing to argue the many ways the trial counsel was ineffective. (Doc. No. 2 at 13-17.)

26  Petitioner's third claim alleges many of the same deficiencies, but directly against trial

27  counsel claiming that trial counsel failed to (1) fully inform Petitioner of the pending

28  charges; (2) fully investigate the case; (3) negotiate a plea bargain; and (4) that trial counsel

15cv704-BEN(WVG)

1   was vindictive in representing Petitioner. (Doc. No. 2 at 18-23.)   The Petition includes

2   incomplete, and at times, unidentified transcripts, but Petitioner's Motion does not cite

3   specific portions of the transcripts.   If anything, the transcripts demonstrate that he was

4   unable to convince the Trial Court his trial counsel was ineffective – he states that his

5   attorney "apparently did not care about this case. She just took me to trial." (Doc. No. 1,

6   49:14-15.)  However, upon questioning, his trial counsel confirmed that Petitioner "would

7   not enter into a time waiver," and "said under no circumstances would he waive his right

8   to a speedy trial." (Doc. No. 1, 44:7-45:7.)

9          Petitioner claims that two days into trial, before a verdict was reached, trial counsel

10   told him to return for sentencing, presumably implying trial counsel's lack of confidence

11   in a favorable outcome and corresponding lack of effort on her part to represent him. (Doc.

12   No. 1, 37:24 – 38:19.)   However, the Trial Court expressed skepticism and indicated a

13   general disbelief at Petitioner's contention. (Doc. No. 1, 38:22.)   When questioned,

14   Petitioner's trial counsel explained that she told Petitioner he would "have to come back

15   [to court] as long as the jury is deliberating … you will be here available for a verdict when

16   one becomes available."  (Doc. No. 1, 45:25-46:2.)  She denied telling Petitioner he would

17   need to return for sentencing two days into trial. (Doc. No. 1, 46:3-6.) Petitioner also raised

18   an argument that his counsel did not adequately warn him of a twenty year sentence,

19   claiming that otherwise he would have taken the plea deal offered. (Doc. No. 1, 39:5-21.)

20   However, the Trial Court clarified that Petitioner was present at the arraignment and knew

21   what his charges were. (Doc. No. 1, 40:18-25.) Petitioner's trial counsel confirmed that her

22   notes indicate she did warn Petitioner of a potential twenty year sentence.  (Doc. No. 1,

23   42:2-15.)

24          Petitioner offers even less evidence regarding his claims against his appellate

25   counsel, only providing a correspondence indicating that his appellate counsel returned

26   various documents to Petitioner in January 2015.  Petitioner makes no argument as to why

27   he has a likelihood of success on these claims. Petitioner's evidence demonstrates little to

28   no likelihood of success on claims against either his trial counsel or his appellate counsel

1    for ineffective assistance.

2         As to Petitioner's claim arguing "Illegal Sentence," his allegations are vague, but

3    attempt to point to testimony supporting a lesser crime.  Petitioner makes no argument

4    explaining how any of the attached transcripts support his claims, nor does he provide any

5    specific citations to portions of the transcripts.  Moreover, upon review, the Court cannot

6    identify anything in Petitioner's array of attached transcripts from various Court hearings

7    that rises to any showing of merit.  With scant evidence and contradictory witness

8    transcripts, Petitioner fails to demonstrate a likelihood of success on the merits of his claim

9    for "Illegal Sentence."  Accordingly, the Court finds that there is no cause to grant a stay

10   under *Rhines* to allow Petitioner to pursue his unexhausted claims.

11   **V.     RECOMMENDATION**

12        For the aforementioned reasons, the Court RECOMMENDS Petitioner's Motion to

13   Stay be DENIED.  This Report and Recommendation of the undersigned Magistrate Judge

14   is submitted to the United States District Judge assigned to this case, pursuant to the

15   provision of 28 U.S.C. Section 636(b)(1).

16        IT IS ORDERED that no later than February 23, 2016, any party to this action may

17   file written objections with the Court and serve a copy on all parties. The document should

18   be captioned "Objections to Report and Recommendation."

19        IT IS FURTHER ORDERED that any reply to the objections shall be filed with the

20   Court and served on all parties no later than March 9, 2016. The parties are advised that

21   failure to file objections within the specified time may waive the right to raise those

22   objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

23    IT IS SO ORDERED.

24   Dated:  February 3, 2016

25   _____

26   Hon. William V. Gallo
     United States Magistrate Judge

27

28

11