UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| EBRAHIM MUSSA MOHAMED, | Case No.: 15-CV-704-BEN-WVG |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| CYNTHIA TAMPKINS, Warden, | |
| Defendant. | |

## I. INTRODUCTION

Petitioner Ebrahim Mussa Mohamed, a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 challenging his convictions in San Diego County Superior Court for five counts of assault with a deadly weapon and one count of stalking.[1] Petitioner raises four claims of Constitutional violations in support of his Petition.

The Court has read and considered the Petition, Respondent's Answer, Petitioner's Traverse, and all of the lodgments filed. For the reasons discussed below, the Court **RECOMMENDS** the Petition be **DENIED**.

---

[1] The Court notes that Petitioner is identified as 'Ebrahim Mohamed Mussa' in much of the state court record.

## II. FACTUAL BACKGROUND

The Court gives deference to state court findings of fact and presumes them to be correct. 28 U.S.C. §2254(e)(1). However, a petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *Id.*; *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal opinion:

> [Petitioner] dated Kalkidan Gebremichael from 2009 through February 2012, when she ended their relationship. On March 13, 2012, she obtained a temporary restraining order against him based on threats he made against her.
>
> At about 11:00 p.m. on April 13, 2012, Gebremichael drove her coworker, Jose Reynosa, to his home after work. She parked her car in front of his house and they talked for a while. [Petitioner] approached Gebremichael's car and repeatedly struck the driver's side window and windshield with an anti-theft steering wheel club. The windshield shattered. Gebremichael started her car and drove away with Reynosa, going eastbound on University Avenue. At the intersection of 35th Street and University Avenue, her car was struck from behind by another vehicle. Her car was struck from behind three more times at the 38th Street, 40th Street, and 41st Street intersections. San Diego Police Officer Derrick Young saw Gebremichael's car and a white Honda Accord drive through a red light at the intersection of University Avenue and Chamoune Avenue. The cars were travelling about 60 miles per hour. As he turned to initiate a traffic stop, Gebremichael's car immediately pulled over, while the Honda continued eastbound on University Avenue until making a left turn onto 46th Street. The Honda parked in a parking lot and [Petitioner] jumped out of it and ran toward Young. Young ordered [Petitioner] to stop, but he continued to approach Young with his hand in his jacket. He then turned around, returned to his car, reentered it, and reached into the back seat. Young ordered him to exit the car and get on the ground. [Petitioner] eventually complied and was arrested.
>
> During a search of a [Petitioner's] car, officers found an anti-

theft vehicle club on the floorboard behind the driver's seat and blood on the shifting column. [Petitioner's] right hand was bleeding. When officers spoke with Gebremichael, she appeared to be terrified of [Petitioner] and described that evening's events. She feared for her life.

An amended information charged [Petitioner] with five counts of assault with a deadly weapon (§ 245, subd. (a)(1)) and one count of stalking (§ 646.9, subd. (a)). It further alleged he had been convicted of a prior "strike" (i.e., serious or violent felony) (§§ 667, subds. (b)-(i), 1170.12, 668), and had a prior stalking conviction (§ 646.9, subd. (c)(2)). At trial, after the close of the prosecution's case, the defense elected not to present any evidence. The jury found [Petitioner] guilty on all six counts. In a bifurcated proceeding, the trial court found true the prior strike allegation. The court sentenced [Petitioner] to a term of eight years in prison for count 1 and concurrent six-year terms for counts 2, 3, and 4. It imposed a consecutive two-year term for count 5. It imposed a five-year term on count 6 (stalking conviction), but stayed its execution pursuant to section 654. [Petitioner] was sentenced to a total term of 10 years in prison.

(Lodgment 8, ECF No. 35-8 at 2-3.)[2]

### III. PROCEDURAL BACKGROUND

**A. STATE COURT PROCEEDINGS**

On June 28, 2012, Petitioner was convicted of five counts of assault with a deadly weapon and one count of stalking. (Lodgment 1, ECF No. 35-1 at 146-151.) On July 30, 2012, Petitioner filed a direct appeal with the California Court of Appeal. (Lodg. 1 at 122.) On November 19, 2013, Petitioner petitioned the California Supreme Court to review whether a defendant must expressly waive his or her right to testify. (Lodgment 9, ECF No. 35-9.) The California Supreme Court denied the petition for review on January 14, 2014, without comment or citation to authority. (Lodgment 10, ECF No. 35-10.) On June 26, 2015, Petitioner filed a petition for habeas corpus with the California Supreme Court.

---

[2] The page numbers cited refer to the page numbers imprinted by Pacer unless otherwise noted.

(Lodgment 11, ECF No. 35-11.) This petition was summarily denied without comment or citation to authority on September 30, 2015. *See In re Mohamed*, 2015 Cal. Lexis 7248.

### B. FEDERAL COURT PROCEEDINGS

On March 30, 2015, Petitioner filed a Petition for Writ of Habeas Corpus. (Petition, ECF No. 1.) Petitioner simultaneously filed a Motion to Stay. (ECF No. 2.) The Petition was dismissed without prejudice, allowing Petitioner until June 15, 2015, to submit proof of his inability to pay filing fees. (ECF No. 3.) Petitioner filed a Motion for Leave to Proceed In Forma Pauperis on May 20, 2015. (ECF No. 4.) The Court reopened the matter after granting the motion. (ECF No. 5.) On June 3, 2015, Petitioner's motion seeking a stay of his Petition to allow him time to exhaust his claims in state court was renewed. (ECF No. 9.) The Court issued a Report and Recommendation on February 3, 2016, recommending a denial of Petitioner's motion to stay. (ECF No. 21.) On March 7, 2016, the Honorable Roger T. Benitez, issued an order adopting the Report and Recommendation and denied Petitioner's Motion to Stay. (ECF No. 22.) On July 27, 2016, Respondent filed an Answer to the Petition, (Answer, ECF No. 34,) and lodged numerous state court records, (Lodgments, ECF No. 35). Petitioner timely filed a Traverse on September 12, 2016, (ECF No. 36,) and filed an Amended Traverse on January 23, 2017, (ECF No. 40). Having found further briefing necessary

### IV. STANDARD OF REVIEW

The Petition is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by a state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination, rather,

the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *see also Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). To prevail, a petitioner must establish that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error … beyond any possibility for fairminded disagreement." *Burt v. Titlow*, — U.S. —, —, 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); accord *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court

precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law. *Id*. Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

## V. DISCUSSION

Petitioner raises four grounds for relief in his Petition. He contends : (1) the trial court erred by not obtaining Petitioner's express waiver of right to testify; (2) ineffective assistance of appellate counsel; (3) ineffective assistance of trial counsel; and (4) that Petitioner's sentence is illegal due to insufficient evidence. (Pet. at 6-9.)

**a. Express Waiver of Right to Testify**

Petitioner contends that the trial Court violated his Fifth, Sixth, and Fourteenth Amendment rights by failing to obtain his express waiver of right to testify. (Pet. at 6.) In support of this argument, Petitioner claims he was never provided a required notice of waiver and did not knowingly waive his right to testify, as required, citing *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Moreover, Petitioner argues that his trial counsel misled him into a false belief that Petitioner could not disregard the advice of his attorney and testify on his own behalf. (Traverse, ECF No. 36 at 4-5.) Respondents argue a trial court has no duty to affirmatively inform defendants of their right to testify. (Ans. at 4:23-25.)

On direct appeal to the California Court of Appeal, Petitioner similarly argued that his Constitutional right to testify was violated because the trial court did not obtain his express waiver of that right. (*See* ECF No. 35-6 at 10-13.) The court of appeal concluded the trial court did not err by not obtaining Petitioner's express waiver of his right to testify. (ECF No. 35-8 at 6.) Petitioner then filed a Petition for Review in the California Supreme Court, which summarily denied his petition. *See In re Mohamed*, 2015 Cal. Lexis 7248. The last reasoned state court decision, which addresses the merits of the claim, is the

California court of appeal's opinion. It is to that decision this Court must direct its analysis. *See Ylst*, 501 U.S. at 805-06.

The court of appeal found the following facts regarding Petitioner's waiver of his right to testify:

> Outside the jury's presence during trial, [Petitioner] was present when his counsel agreed with the trial court that if he ([Petitioner]) testified, his prior stalking conviction would be admissible for impeachment purposes. At that time, [Petitioner] made no statement indicating he wanted to testify.
>
> Later that day, the prosecution rested its case. The trial court then asked [Petitioner's] counsel how she wanted to proceed. His counsel rested without calling any witnesses or presenting any evidence. [Petitioner] again made no statement indicating he wanted to testify. The jury later returned a verdict finding him guilty on all charges.
>
> In support of his motion for new trial, [Petitioner] argued he was denied effective assistance of counsel when he asked his counsel if he could testify and she advised him not to because his prior conviction would then be admissible. The trial court explained to [Petitioner] that he did not have to follow his counsel's advice and could have testified if he wanted to. The court denied the new trial motion and found the advice of [Petitioner's] counsel not to testify was "sound advice."

(Lodg. 8 at 4.)

The court of appeal reasoned:

> [Petitioner] asserts the trial court erred by not obtaining an express waiver of his right to testify. He argues his right to testify is a fundamental constitutional right and therefore, like a *Miranda* waiver, any waiver of his right to testify must be affirmatively shown to be knowing, intelligent, and voluntary. However, [Petitioner] does not cite any federal or state case so holding and we are not persuaded that a *Miranda*-type procedure is required before a defendant can be found to have waived his or her right to testify at trial.

7

> Citing *U.S. v. Nichols* (2d Cir. 1995) 56 F.3d 403, [Petitioner] alternatively argues there at least needs to be some evidence that he understood the right he was waiving and the consequence of doing so. However, he does not cite any precedent of the United States Supreme Court or California Supreme Court so holding. Because we are not bound by a decision of a lower federal court, we need not follow *Nichols*. Furthermore, we are not persuaded by [Petitioner's] argument that a waiver of a defendant's right to testify can be found only if there is evidence showing the defendant understood that right and the consequences of doing so.
>
> We conclude that, absent a conflict between a defendant and his or her counsel that is evident to the trial court, a court need not obtain an express waiver of the defendant's right to testify and there does not need to be evidence showing the defendant understood that right and the consequences of waiving it. [ ] In the circumstances of this case, there is no evidence on the record, and [Petitioner] does not assert, there was any conflict between him and his counsel regarding his testifying at trial. Furthermore, there is no evidence in the record showing [Petitioner] wanted to testify. He did not notify the trial court of any wish to testify and there is no evidence in the record showing he wanted to exercise his right to testify before or at the time the defense rested. The trial court did not err by not obtaining on the record [Petitioner's] express waiver of his right to testify.

(*Id*. at 5-6.)

The court of appeal did not rule contrary to or unreasonably apply clearly established federal law nor was the decision based on an unreasonable determination of the facts. A defendant in a criminal case has a fundamental Constitutional right to testify on his or her own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987). However, the Supreme Court has never held that a court has an affirmative duty to obtain an express waiver of the right to testify. On the contrary, courts have found that trial courts are not required to affirmatively inform a defendant of his or her right to testify, or to inquire whether they wish to exercise that right. *See United States v. Edwards*, 897 F.2d 445, 447 (9th Cir. 1990) (holding that a defendant waived his right to testify where "[n]either the prosecution nor

8

15-CV-704-BEN-WVG

the court was given any reason to think the defendant desired to testify"). A waiver of the right, however, may be implied. "A defendant who wants to reject his attorney's advice and take the stand may do so, by insisting on testifying, speaking to the court, or discharging his lawyer." *United States v. Pino-Noriega*, 189 F.3d 1089, 1095 (9th Cir. 1999) (internal quotation omitted). "When a defendant remains silent in the face of his attorney's decision not to call him as a witness, he waives the right to testify." *Id*.

A thorough review of the record indicates that Petitioner made no attempt to reject his attorney's advice and to testify on his own behalf. However, the record does indicate that Petitioner was aware he could address the trial court, even against the advice of his attorney. Indeed, Petitioner interrupted the trial court sentencing proceeding, requesting to be heard. (Lodg. 5 at 4:24-25.) The following exchange occurred between the trial court, Petitioner, and Petitioner's defense counsel, Ms. Oliver, on the record during Petitioner's sentencing hearing:

> The Court: Now, I'm not – I know [Petitioner] wants to address the court. I'm not going to prevent him from doing that. I'm going to advise him that he's certainly not required to do that and that he should not address the court unless counsel agrees to – to that addressing of the court. But I – but it is his sentencing, so I'm going to hear from him if he insists.
>
> Ms. Oliver: Thank you.
>
> [Petitioner]: I'm going to hand this to the judge.
>
> Ms. Oliver: Your honor, in speaking with [Petitioner], he informs me that he would like to speak to the court; however, he does not wish to advise me of the nature of what he wishes to discuss with the court.
>
> The Court: Okay.
>
> Ms. Oliver: And I believe he also has an envelope that contains something that he refuses to let me see, and he's handed that envelope to your deputy.

>The Court: I'm not going to look at it if you're not going to let your lawyer look at it.
>
>[Petitioner]: She can look at it, your honor, but this is how I feel, and so --.
>
>Ms. Oliver: Your honor, I've had an opportunity to read the letter that [Petitioner] would like to present to the court.
>
>The Court: This is a *Marsden* motion. Let me clear the courtroom to discuss this.

(Lodg. 5 at 9:4-10:4.) After further discussion, the trial court noted that Petitioner raised both a *Marsden* motion and a motion for a new trial based on ineffective assistance of counsel.[3] (*Id.* at 11:6-11; *see also* Lodg. 1 at 108.) Both of Petitioner's motions were denied. (*Id.* at 11:6, 14:9-10.)

This exchange indicates a number of things to the Court. First, it demonstrates that Petitioner was aware he could address the court directly, and was willing to address the court when he felt it necessary. Second, it indicates that Petitioner was aware that he could do so against the advice of counsel. Lastly, it indicates Petitioner was aware he could request leave to discharge his counsel if a fundamental disagreement occurred. Given this, had Petitioner wished to testify in his own defense, he could have alerted the trial court of this desire or raised a *Marsden* motion at a point prior to his sentencing hearing. Having not done so, neither the prosecution nor the court was given any reason to think the defendant desired to testify, and thus, Petitioner waived his right to testify.

Petitioner's reliance on *Johnson* is misplaced. While *Johnson* does discuss valid waiver, that waiver is in regards to waiving ones right to be represented by counsel in a criminal trial, not waiver of a right to testify. *Johnson*, 304 U.S. at 463-469.

---

[3] A *Marsden* motion is the means by which a criminal defendant can discharge a court-appointed attorney in a California state court when a defendant believes he or she is being provided ineffective assistance or has a conflict with his or her attorney. *See People v. Marsden*, 465 P.2d 44 (Cal. 1989) (en banc).

For the foregoing reasons, the state court's denial of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Petitioner is not entitled to relief as to this claim.

### b. Ineffective Assistance of Trial Counsel

The Court will direct its attention to Petitioner's third claim of relief for ineffective assistance of trial counsel before addressing his second claim, ineffective assistance of appellate counsel. This is so because, in this particular instance and explained further below, Petitioner must be successful in his claim of ineffective assistance of trial counsel in order to succeed on his ineffective assistance of appellate counsel claim. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *see also Moormann v. Ryan*, 628 F.3d 1102, 1107 (9th Cir. 2010) ("If trial counsel's performance was not objectively unreasonable or did not prejudice [the petitioner], then appellate counsel did not act unreasonably in failing to raise a meritless claim of ineffective assistance of [trial] counsel, and [the petitioner] was not prejudiced by appellate counsel's omission."). Petitioner claims his trial counsel's performance fell below constitutional requirements because his trial counsel failed to properly explain Petitioner's exposure if found guilty, failed to properly investigate alleged illegal activity by the police department, and that his trial counsel was vindictive in violation of American Bar Association ethics codes. (Pet. at 18-22.) Petitioner argues that had his trial counsel conducted a proper investigation, there exists a possibility that witnesses may have produced contradictory statements. (Pet. at 19:13-24.) Respondent argues the trial court was reasonable in rejecting Petitioner's claim of ineffective assistance of counsel. (Ans. At 6:25-26.)

Petitioner first raised his ineffective assistance of trial counsel claim during his trial. (Lodg. 5 at 9-10.) Petitioner then similarly argued his trial counsel fell below the constitutional requirements because his trial counsel ████████████████

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[4] (Sealed Lodgment, ECF No. 43 at 4.)

Petitioner did not raise the ineffective assistance of trial counsel claim on direct appeal nor on petition for review with the California Supreme Court. Petitioner raised his ineffective assistance of trial counsel claim in his Petition for Habeas Corpus in the California Supreme Court, which summarily denied his petition without comment or citation to authority. *See In re Mohamed*, 2015 Cal. Lexis 7248. The last reasoned state court decision, which addresses the merits of the claim, is the decision made by the San Diego Superior Court. It is to that decision this Court must direct its analysis. *See Ylst*, 501 U.S. at 805-06.

When the trial court inquired about Petitioner's claim that his trial counsel ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Petitioner's counsel offered the following explanation:

[redacted]

---

[4] The original lodgments containing the trial court transcripts omitted a critical portion of the proceedings regarding Petitioner's claim of ineffective assistance of counsel because they were ordered sealed by the trial court. The Court ordered these documents be provided and filed under seal. For this reason, this Report and Recommendation will be filed under seal along with a redacted Report and Recommendation filed for public view. Petitioner shall be served with the sealed version of the Report & Recommendation.

12

1 ▮▮▮▮▮
2 ▮▮▮▮▮▮▮▮▮▮▮▮
3 ▮▮▮▮▮▮▮
4 (Sealed Lodg. at 14:29-15:19.)

When the trial court inquired about Petitioner's claim that his trial counsel ▮▮▮
▮▮▮▮▮▮, Miss Oliver offered the following testimony:

7 ▮▮▮▮▮▮▮▮▮▮▮▮
8 ▮▮▮▮▮▮▮▮▮▮▮▮
9 ▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮

18 (*Id*. at 15:22-16:6.)

In denying both motions, the trial court reasoned as follows:

20 ▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮

24 ▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮
28 ▮▮▮

13

[redacted]

(*Id.* at 23:7-24:9.)

The trial court made the following conclusion in regards to the performance of trial counsel:

> The court observed counsel throughout the trial, found that at all times during the trial that defense counsel performed in a manner that is consistent with the requirements of the constitution that the defendant in any criminal action be provided with the effective assistance of counsel [].

(Lodg. 5 at 14:10-15.)

The trial court did not rule contrary to or unreasonably apply clearly established federal law nor was the decision based on an unreasonable determination of the facts. The clearly established United States Supreme Court law governing ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996). The Supreme Court has explained the *Strickland* inquiry as follows:

> To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an

> objective standard of reasonableness. A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.
>
> With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations and quotation marks omitted).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. The likelihood of a different outcome must be "substantial," not merely "conceivable," *Richter*, 562 U.S. at 112, and when *Strickland* and AEDPA operate "in tandem," as here, the review must be "doubly" deferential, *id*. at 105. "When [Section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

Applying this doubly deferential standard, the Court concludes Petitioner has failed to meet his burden. After hearing testimony from Petitioner regarding his complaints and the extensive testimony of Petitioner's trial counsel the state court reasonably concluded Ms. Oliver's conduct was ▮▮▮▮▮▮▮▮▮▮ and that she ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Sealed Lodg. at 23:7-24:9.) Petitioner has offered no argument that the trial court was unreasonable in its determination. Moreover, Petitioner fails to establish he was prejudiced by his trial counsel's performance. Petitioner's lone argument that there existed the possibility that favorable information may be discovered is highly speculative and does not begin to

approach the requirement that the likelihood of a different outcome be substantial.

Petitioner has failed to show the trial court was unreasonable in determining his trial counsel performed at the level required by the Constitution, and has failed to show he was prejudiced by his trial counsel. Thus, Petitioner is not entitled to relief as to this claim.

### c. Ineffective Assistance of Appellate Counsel

Petitioner's second claim is ineffective assistance of appellate counsel. Petitioner argues his appellate counsel failed by not raising the claim of ineffective assistance of trial counsel. (Pet. at 13.) Respondent argues the state court reasonably rejected this claim because the underlying allegation of ineffective assistance of trial counsel was unmeritorious. (Ans. At 7:3-7.)

In order to prevail on such a claim, Petitioner must show that his appellate counsel unreasonably failed to raise a merit-worthy claim on appeal and that this failure prejudiced Petitioner. *Smith v. Robbins*, 528 U.S. at 285; *see also Moormann*, 628 F.3d at 1106 (9th Cir. 2010) ("First, the petitioner must show that counsel's performance was objectively unreasonable, which in the appellate context required the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy issue. Second, the petitioner must show prejudice, which in this context means that the petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal."). The Court may consider either *Strickland* prong, and need not address both if Petitioner fails one. *Strickland*, 466 U.S. at 697. "If trial counsel's performance was not objectively unreasonable or did not prejudice [the petitioner], then appellate counsel did not act unreasonably in failing to raise a meritless claim of ineffective assistance of [trial] counsel, and [the petitioner] was not prejudiced by appellate counsel's omission." *Moorman*, 628 F.3d at 1107.

Having already found that Petitioner's trial counsel was not objectively unreasonable nor was his trial counsel's performance prejudicial to Petitioner, Petitioner's appellate counsel "did not act unreasonably in failing to raise a meritless claim of ineffective assistance of counsel" claim. *Moorman*, 628 F.3d at 1107. Therefore, Petitioner is not

entitled to relief as to this claim.

### d. **Improper Charge**

Petitioner titles his fourth claims as an "Illegal Sentence PC 245(a)(1)". (Pet. at 24:2.) However, a thorough reading of Petitioner's argument reveals that he is claiming the evidence presented was insufficient to support the charge of assault with a deadly weapon. (*Id.* at 24-27.) Additionally, Petitioner asserts there "was no 'physical' harm done," his actions were simply the actions of "childishness" against a lover, that the proper charge should have been vandalism, and that the damage done was not consistent with assault with a deadly weapon. (*Id.* at 24-25.) Petitioner requests the Court to reduce the severity of his charged offense. (*Id.* at 27:18-21.) Respondents argue that Petitioner's conduct did indeed amount to assault with a deadly weapon as defined in California Penal Code, Section 245(a)(1) and was reasonably rejected by the state court. (Ans. 7:10-20.)

Petitioner's claim that there was insufficient evidence is a state law claim. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Relief pursuant to habeas corpus is "unavailable for alleged error in the interpretation or application of state law." *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) Further, the crimes in which a defendant is charged by a state prosecutor does not raise a federal question. *White v. Wilson*, 399 F.2d 596, 599 (9th Cir. 1968) (finding that the charging of a prior felony conviction raised no federal question); s*ee also Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (finding that federal courts "have no authority to review a state's application of its own laws"). Given this, Petitioner is only entitled to federal habeas corpus relief for this claim if the alleged violation of state law denied Petitioner his due process right to fundamental fairness. *Estelle*, 502 U.S. at 71-2 (1991). However, "the Due Process clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983).

Petitioner identifies no potential due process violations regarding the evidence admitted at trial. Rather, Petitioner seems to question the jury's decision to convict based on the evidence presented at trial and attempts to re-argue his case. Since this claim is a state law matter and Petitioner has identified no potential due process violations, Petitioner is not entitled to relief as to this claim.

## VI. CONCLUSION

For the aforementioned reasons, the Court **RECOMMENDS** Petitioner's Petition for Writ of Habeas Corpus be **DENIED** without prejudice. This Report and Recommendation is submitted to U.S. District Judge Roger T. Benitez, pursuant to the provision of 28 U.S.C. Section 636(b)(1).

**IT IS ORDERED** that no later than **July 12, 2017** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to any objections shall be filed with the Court and served on all parties no later than **July 19, 2017**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: June 9, 2017

Hon. William V. Gallo
United States Magistrate Judge